**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

Wiacek Farms, LLC,                          :
    Plaintiff,                          :
                                        :
v.                                          :   Civil No. 3:04cv1635 (JBA)
                                        :
City of Shelton, Mark Lauretti,             :
Robert Kulacz, John Anglace,                :
and Thomas Dingle,                          :
    Defendants.                         :

<u>**RULING ON DEFENDANTS' MOTION TO DISMISS [DOC. # 35]**</u>

Plaintiff Wiacek Farms, LLC ("Wiacek"), a landowner seeking
to develop a subdivision, brings a federal question lawsuit
pursuant to 28 U.S.C. §§ 1331 and 1343 against the City of
Shelton, Connecticut; its Mayor, Mark Lauretti; its City
Engineer, Robert Kulacz; the President of the Shelton Board of
Aldermen, John Anglace; and Shelton's zoning enforcement officer,
Thomas Dingle.  <u>See</u> Amended Complaint [Doc. # 31].  Plaintiff
alleges that defendants have illegally interfered with Wiacek's
development of a 41-acre parcel in Shelton, in violation of its
rights to substantive due process (Count One), procedural due
process (Count Two), and equal protection of the laws (Count
Three), as implemented through 28 U.S.C. § 1983 (Count Four).
Plaintiff also brings supplemental state law claims for
promissory estoppel (Count Five), breach of the implied duty of
good faith and fair dealing (Count Six), and tortious
interference with plaintiff's contracts and business expectancies
(Count Seven).  Defendants have moved to dismiss all the claims

1

for lack of subject matter jurisdiction, under Fed. R. Civ. P. 12(b)(1), on the grounds that plaintiff's complaint is not ripe for adjudication.  <u>See</u> Mot. to Dismiss [Doc. # 35].  For the reasons that follow, defendants' motion will be granted.

**I.   FACTUAL BACKGROUND**

The Amended Complaint alleges the following facts.  Wiacek owns approximately 41 acres of land in Shelton, which it hopes to develop into a 24-lot subdivision.  Am. Compl. ¶ 11.  It submitted a subdivision plat to the Shelton Planning and Zoning Commission on October 31, 2003, which was preliminarily approved on March 9, 2004.  <u>Id.</u> at ¶¶ 11-12.  On July 22, 2004, Wiacek posted the required subdivision bonds with the City, and the Commission approved the final subdivision map, which was filed on the Shelton land records.  <u>Id.</u> ¶ 13.

Wiacek alleges that on August 6, 2004, defendant Anglace, President of the Shelton Board of Aldermen, announced in the <u>Connecticut Post</u> that the "Board had 'recently authorized' the defendant Mayor Lauretti to attempt to purchase Wiacek's property on behalf of the City of Shelton, and failing that attempt 'to commence condemnation proceedings.'"  <u>Id.</u> at ¶ 14.  According to the article, the City desired to add the property to its current high school complex.  <u>Id.</u>  Mayor Lauretti then "met with representatives of Wiacek to discuss the possible purchase by the City of twenty (20) lots in the approved 24 lot subdivision.  The

2

next day, August 31, 2004, Wiacek's representatives informed the City that Wiacek was unwilling to sell a portion of the approved subdivision to the City upon the terms suggested by the Mayor." Id. at ¶ 15.

Immediately thereafter, Wiacek attempted to begin construction.  On September 9, 2004, Wiacek submitted an application for an excavation permit to the City Engineer, John Kulacz, to install water, gas, telephone, electric or "CATV building service" and to build "new roads known as Wiacek Farm Road and Cecelia Lane." Id. at ¶ 17.  Wiacek's subcontractor submitted a similar permit the same day.  The complaint alleges that "defendant Kulacz refused to approve the Applications or to issue the... excavation permits stating arbitrarily and without any legal authority that said Applications 'must be approved by Mayor's office.'" Id. at ¶ 22.  Kulacz stated that the "Mayor, defendant Lauretti, had ordered him (Kulacz) not to issue any permits to the Plaintiff for the property and to direct any inquiries regarding the Property to the Mayor's... Office." Id. at ¶ 23.

Plaintiff alleges that the Zoning Enforcement Officer, defendant Dingle, then posted "stop work orders" on the property for violations of the building, zoning, or wetland regulations, but that these violations never existed and the City never served Wiacek with a "cease and desist" order.  Id. at ¶¶ 24-25.

Plaintiff also alleges that he was not given an opportunity to be heard before the posting of the "stop work" orders.  Id. at ¶ 33.

In January 2005 the City commenced a "condemnation action" against 35.99 acres of Wiacek's property, id. at ¶ 27, and Wiacek's motion for a preliminary and permanent injunction to halt the eminent domain proceedings was denied by the Connecticut Superior Court approximately three months later.  Wiacek Farm, LLC v. City of Shelton, No. CV054002169S, 2005 WL 1023152 (Conn. Super. Ct. Mar. 30, 2005).[1] The complaint does not state whether plaintiff appealed this ruling, nor does it indicate the current status of the eminent domain proceeding.

In fact, in this case plaintiff does not challenge defendants' actions under the Takings Clause of the Fifth Amendment.  Rather, plaintiff alleges that he was denied substantive due process because defendants' actions prior to the initiation of eminent domain proceedings were "without

---

[1]In this injunction action plaintiff raised similar allegations of arbitrary and capricious action and bad faith on the part of the mayor and other officials in taking Wiacek's property through eminent domain.  Wiacek Farm, LLC v. City of Shelton, No. CV054002169S, 2005 WL 1023152 at *2-3 (Conn. Super. Ct. Mar. 30, 2005).  Specifically, Wiacek argued that Shelton officials violated the requirement of Conn. Gen. Stat. § 48-6 permitting a city to take property by eminent domain only if it cannot agree with the owner on the amount to be paid.  Id. at *2.  The Superior Court found that the City's attempt to negotiate did not "constitute bad faith or pretext."  Id.  Although the bad faith allegations in the present case are similar, defendants have not raised the issue of collateral estoppel in their answer.

discernable standards or legal justification, irrational, arbitrary, capricious, and... motivated by political concerns." Id. at ¶ 30.  Plaintiff alleges that the "stop work" orders were issued "without legal justification and without sufficient, due and fair process," in violation of procedural due process principles.  Id. at ¶ 33.  Finally, plaintiff alleges a "class of one" Equal Protection claim, on the grounds that he was treated "selectively and differently from others who sought to develop similar projects in Shelton," "because of a stated desire of the City of Shelton to take the property for its own purposes, which motive is impermissible and unrelated to a legitimate government objective."  Id. at ¶¶ 35, 38.

Defendants filed an Answer and Affirmative Defenses [Doc. # 7] to the original Complaint on December 17, 2004, and the present motion to dismiss the Amended Complaint on June 29, 2005.

## II.  STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Motions under Rule 12(b)(1) "technically" should be raised before the filing of a responsive pleading.  Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 955 n.2 (9th Cir. 2004). However, under Rule 12(h)(3), the issue of the Court's subject

5

matter jurisdiction may be raised at any time: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3). "The distinction between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party. For purposes of this case, the motions are analytically identical because the only consideration is whether subject matter jurisdiction arises." Berkshire Fashions, Inc. v. M.V. Hakusan II, 954 F.2d 874, 879 n.3 (3d Cir. 1992) (internal citation omitted). Thus the Court may consider defendants' motion in the present case "because the issue of jurisdiction can be raised any time during the proceedings." Gonzalez v. Rubin, 225 F.3d 662 (9th Cir. 2000) (unpublished).

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Makarova, 201 F.3d at 113 (citing Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996) ("The burden of proving jurisdiction is on the party asserting it.")). In resolving a motion to dismiss for lack of subject matter jurisdiction, the court may refer to evidence outside the pleadings. Id. Evidence concerning the court's jurisdiction "may be presented by affidavit or otherwise." Kamen v. American Tel. & Tel. Co., 791

F.2d 1006, 1011 (2d Cir. 1986).

## III. DISCUSSION

Defendants challenge plaintiff's complaint on the grounds that it is unripe for review in federal court.  "Ripeness is a jurisdictional inquiry" because it "is a doctrine rooted in both Article III's case or controversy requirement and prudential limitations on the exercise of judicial authority."  Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005).

The Supreme Court first set forth the ripeness test for land use cases in Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172 (1985), which involved a Takings Clause challenge to a local planning commission's refusal to approve a subdivision in the form requested by a developer.  The Supreme Court refused to uphold a jury verdict in the developer's favor because the developer had "not yet obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property, nor utilized the procedures Tennessee provides for obtaining just compensation..." Id. at 186.  Thus, Williamson established a two-prong test in Takings Clause cases.  First, because a plaintiff in a regulatory takings case must establish that he/she has "been denied all reasonable beneficial use of the property," the plaintiff must show that he/she has pursued all necessary steps to obtain a final determination from the relevant land use authorities,

7

including requesting variances, where available.  Id. at 190.
Second, "if a State provides an adequate procedure for seeking
just compensation, the property owner cannot claim a violation of
the Just Compensation Clause," and therefore a plaintiff's claim
is not ripe until he/she has sought and been denied compensation
through available state procedures.  Id. at 195.

The Williamson test subsequently has been applied to
substantive and procedural due process and equal protection
claims.  See, e.g., Dougherty v. Town of N. Hempstead Bd. of
Zoning Appeals, 282 F.3d 83 (2d Cir. 2002) (procedural and
substantive due process and equal protection); Southview Assocs.,
Ltd. v. Bongartz, 980 F.2d 84 (2d Cir. 1992) (substantive due
process); cf. Norton v. Town of Islip, 239 F. Supp. 2d 261
(E.D.N.Y. 2003) (ripeness test applied only to substantive but
not procedural due process claim where the two claims challenged
different governmental actions).

As the Second Circuit clarified in Southview, however, with
respect to "substantive due process claim[s] premised on
arbitrary and capricious government conduct,... only the final
decision prong of the Williamson ripeness test" applies.
Southview, 980 F.2d at 96-97.  Such claims are distinguished from
Fifth Amendment claims that the state has taken its police powers
"too far" in regulating land use, which are subject to both
prongs of the ripeness test.  Id.  The plaintiff in Southview

challenged a decision of environmental permitting authorities,
upheld by the Vermont Supreme Court, denying an application to
develop a certain portion of forested land near a ski mountain.
The decision, however, left open other portions of the lot to
development.  The plaintiff alleged a regulatory takings claim as
well as a substantive due process claim premised on arbitrary and
capricious action by the Vermont regulators.  The Second Circuit
held that the "arbitrary and capricious government conduct" claim
was not ripe because Southview had not yet submitted alternative
proposals for consideration, and "[u]nless a court has a final
decision before it, it cannot determine... whether the government
conduct was arbitrary or capricious."  Id. at 97 (citing Landmark
Land Co. v. Buchanan, 874 F.2d 717, 722 (10th Cir. 1989)).

Relying on Lucas v. South Carolina Coastal Council, 505 U.S.
1003 (1992), the Second Circuit in Southview, 980 F.2d at 98,
recognized a futility exception to the final decision rule.  This
exception was expanded in Murphy, 403 F.3d at 349, which held
that "a property owner need not pursue [variance] applications
when a zoning agency lacks discretion to grant variances or has
dug in its heels and made clear that all such applications will
be denied."

Wiacek argues that in this case there was a final decision
because its subdivision plan was fully and finally approved by
the Shelton Planning and Zoning Commission.  Pl. Mem. of Law in

9

Opp. [Doc. # 37] at 13.[2]  Plaintiff, however, is not challenging
in this case the procedures surrounding approval of the
subdivision plan.  As plaintiff acknowledges, see Pl. Mem. of Law
in Opp. at 14, the complaint is directed to the actions of
defendants Kulacz and Dingle, who denied excavation permits and
issued "stop work" orders, respectively, after the subdivision
plan was approved, and Mayor Lauretti, who allegedly ordered
Kulacz to deny the excavation permits and masterminded the halt
of construction in order to obtain the land for the high school.
Therefore, the issue is whether the decisions of these
individuals constituted final land use decisions within the
meaning of Williamson.

     Under state law, plaintiff had a right to de novo review by
the Shelton Zoning Board of Appeals of defendant Dingle's
issuance of the "stop work" orders, which were based on alleged
violations of planning and zoning regulations.  Conn. Gen. Stat.
§ 8-7 (Zoning Board of Appeals may hear appeal of any "order,
requirement or decision of the official charged with the
enforcement of the zoning regulations... [including] any such
order... which prohibits further construction..."); Murphy, 402
F.3d at 352 (citing Caserta v. Zoning Bd. of Appeals, 226 Conn.

_____

     [2]Defendants respond that the Commission's approval was only
conditional, but have not submitted evidence in support of this
assertion, despite the fact that a Court may examine facts
outside the pleadings when determining subject matter
jurisdiction.

80, 90, 626 A.2d 744, 748 (1993) (Zoning Board of Appeals is required to hold a <u>de novo</u> hearing "to find the facts and to apply the pertinent zoning regulations to those facts.")).

Defendants have proffered the affidavit of defendant Kulacz, who states:

> In my role as City Engineer, I act as the designee of the Director of Public Works of the City of Shelton when I review, and either grant or deny, applications for excavation permits.
>
> Applicants who have had their applications for excavation permits denied may appeal such denial to the Director of Public Works.

Kulacz Aff., ¶¶ 5-6, Def. Mem. of Law [Doc. # 36], Ex. B.  The affidavit gives no meaning to "may appeal," and cites to no authority showing that an applicant who is denied an excavation permit has an appeal as of right to the Director of Public Works. Defendants have proffered no written regulations or administrative guidelines setting out any appeal process from such denial, to which plaintiff would be entitled.[3]

However, plaintiff alleges that a "stop work" order from the Planning and Zoning Commission halts all construction, <u>see</u> Am.

---

[3]The Court notes that Shelton's Planning and Zoning Commission has promulgated detailed guidelines for the development and approval of subdivisions, <u>Subdivision Regulations of the City of Shelton, Connecticut</u>, available at <u>http://www.cityofshelton.org/gengov/pdf/subdivregs.pdf</u> (last visited 10/26/05), but the Department of Public Works does not appear to have promulgated written guidelines for the issuance or appeal from the refusal to issue excavation permits. <u>See Inside Public Works: Engineering</u>, available at <u>http://www.cityof shelton.org/publicwrks/engineer.htm</u> (last visited 10/26/05).

Compl. ¶ 24, and thus even if Kulacz had issued the excavation permit, it would be of no effect after the "stop work" order was posted.  Therefore the outcome of plaintiff's appeal of the "stop work" order to the Zoning Board of Appeals also will determine whether the excavation permit could issue, and plaintiff's failure to obtain a final decision from the Zoning Board of Appeals is dispositive of this case.

Plaintiff has proffered no evidence that the challenged "stop work" orders were not appealable.  Nor does plaintiff argue that appeal would have been futile, or merely supervisory rather than de novo.  Rather, plaintiff argues that because it has removed its "pure" takings clause claim from the complaint, it has satisfied the ripeness prerequisite because defendants' decisions to deny the requested decisions occurred subsequent to the final approval of the subdivision plan.

Plaintiff's argument misses the mark because, despite its efforts to plead around the Williamson requirements, the essence of its due process claim is that defendants intentionally delayed Wiacek's construction project by denying the requested excavation permits and issuing the "stop work" orders.  The crux of the equal protection claim is, likewise, that other similarly-situated landowners were not required to obtain the mayor's approval before the award of excavation permits.  Wiacek's complaint therefore focuses on whether the requested permits

should have issued and other construction work allowed to
proceed.  Under Williamson, this type of challenge to local
regulatory action only may be brought to federal court after a
plaintiff has pursued available appeals or other remedies, and
obtained a final decision.

As the Second Circuit explained, four considerations
"undergird [Williamson] prong-one ripeness."  Murphy, 402 F.3d at
348.

> First... requiring a claimant to obtain a final decision
> from a local land use authority aids in the development
> of a full record.  Second, and relatedly, only if a
> property owner has exhausted [all remedies] will a court
> know precisely how a regulation will be applied to a
> particular parcel.  Third [the appeal] might provide the
> relief the property owner seeks without requiring
> judicial entanglement in constitutional disputes....
> Finally, since Williamson County, courts have recognized
> that federalism principles also buttress the finality
> requirement.  Requiring a property owner to obtain a
> final, definitive position from zoning authorities
> evinces the judiciary's appreciation that land use
> disputes are uniquely matters of local concern more aptly
> suited for local resolution.

Id.  These considerations provide persuasive justification for
refusing to entertain Wiacek's constitutional challenges to the
actions of various Shelton officials relating to its construction
project until Wiacek can show that it has obtained a "final
decision" from appropriate regulatory authorities.  Wiacek's
current Amended Complaint is not ripe for review.

Having decided that the Court lacks subject matter
jurisdiction over plaintiff's constitutional claims, the Court

declines to exercise supplemental jurisdiction over plaintiff's state law claims.  <u>See</u> 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim... if... the district court has dismissed all claims over which it has original jurisdiction...").

**IV.   CONCLUSION**

Accordingly, defendants' motion to dismiss the complaint for lack of subject matter jurisdiction [Doc. # 35] is GRANTED and the complaint is DISMISSED WITHOUT PREJUDICE.  The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/

_____
JANET BOND ARTERTON, U.S.D.J.

**Dated at New Haven, Connecticut, this 28th day of October, 2005.**